Harrel L. Davis
Texas Bar No. 05567560
Gordon Davis Johnson & Shane P.C.
4695 N. Mesa St.
El Paso, Texas  79912
(915) 545-1133 (telephone)
(915) 545-4433 (facsimile)
E-Mail:  hdavis@eplawyers.com
*Attorneys for U.S. Pecans, Ltd.*

**IN THE UNTED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § § § | |
| NOC, INC., | § § | Case No. 23-40266-elm |
| | § | Chapter 11 |
| Debtor. | § § | |
| | § | |
| DANIEL J. SHERMAN, AS LIQUIDATING TRUSTEE FOR THE LIQUIDATING TRUST OF NOC, INC., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adv. No. 25-04024-elm |
| U.S. PECANS, LTD. | § § § | |
| Defendant. | § | |

**AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR
WHICH RELIEF CAN BE GRANTED AND FOR FAILURE TO MEET THE
<u>PLEADING REQUIREMENTS OF 11 U.S.C. §547(b)</u>**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW U.S. PECANS, LTD. (hereinafter "USP"), Defendant in the above-styled and referenced adversary proceeding, and files this its Amended Motion to Dismiss for Failure to State a Claim for Which Relief Can be Granted and for Failure to Meet the Pleading Requirements of 11 U.S.C. §547(b) pursuant to Rule 7012 of the Federal Rules of Bankruptcy

Procedure, incorporating Federal Rules of Civil Procedure 12(b)(6), and in support thereof, would respectfully show the Court as follows:

1. Navarro Pecan Company, Inc. filed its Chapter 11 on January 30, 2023. Plaintiff filed this adversary proceeding on January 30, 2025 by filing his Complaint to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550 (the "Complaint"). This Motion is USP's initial pleading.

2. The allegations of Plaintiff do not support any preference cause of action against USP.

3. Further, Plaintiff has failed to meet the pleading requirements of 11 U.S.C. §547(b).

## Background Facts

4. Defendant is an entity comprised of several entities belonging to family farmers located in El Paso County, Texas who are in the business of growing pecans. For a number of years, through Newell Atkinson, in his capacity as CEO of U.S. Pecans Management, LLC (hereinafter "USPM"), pecans belonging to USP were placed, <u>in trust</u>, at Navarro Pecan Company, Inc. n/k/a NOC, Inc. (the "Debtor" or "Navarro") located in Corsicana, Texas. Title to the pecans at issue did not transfer to Navarro nor did the proceeds from the sale of the same.

5. Navarro was a pecan warehouse and processing center. Defendant's pecans were delivered to Navarro by USPM. All pecans that were delivered to Navarro were done so with a warehouse receipt that reflected the amount of pecans being delivered and which clearly denoted that the pecans belonged to USP. Before Navarro could sell USP's pecans and obtain a release of the warehouse receipt, Navarro had to pay USP for its pecans. Navarro was not authorized to sell USP's pecans without paying for the same. USP was the owner of the pecans and the

proceeds thereof. Navarro could not transfer good title because it never held title, nor could Navarro, by sale, obtain a right to or interest in the proceeds of the sale of goods it had no authority to sell without payment.

6. Atkinson had a close relationship with the principals of Navarro – George Martin and his daughter Mary Martin Magers. In fact, Atkinson was a partner in various businesses with Mr. Martin.

7. At some point, Navarro began shelling and selling USP's pecans without paying for the same. Defendant was not aware that this was taking place. Defendant could not, with the exercise of reasonable due diligence, discover the claims brought herein or the damages caused to them. In fact, USP paid an entity called Collateral Certification Services, LLC ("CCS") a monthly fee to certify that USP's pecans were still located at the Navarro warehouse. CCS never made USP aware, until after the filing of Navarro's Chapter 11 proceeding, that any of the pecans belonging to USP were missing. CCS is the entity that issued the warehouse receipts and at no time did CCS's reports indicate that Navarro had sold USP's invoices without USP's consent or without payment.

8. It appears that this was taking place because Truist Bank (Navarro's lender) was putting pressure on Navarro and its principals to pay down its debt. Truist Bank did not have a UCC filing or any other lien on or claim to USP's pecans or the proceeds from the sale of the same. Neither Navarro nor Truist Bank ever obtained a release of USP's warehouse receipts reflecting USP's ownership of the pecans.

9. On January 30, 2023, the Debtor filed for relief under Chapter 11 of the U.S. Bankruptcy Code.

10. On the same date, the Debtor filed its Motion for Entry of an Order (A)

Authorizing the Sale of Subject Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Granting the Buyer the Protections Afforded to a Good Faith Purchaser, (C) Approving Buyer Protections in Connection with Sale of Assets of the Debtor and (D) Granting Related Relief (the "Sale Motion").  (Docket No. 6). The Debtor filed an Amended Sale Motion on February 22, 2023. (Docket No. 88).

11. On February 22, 2023, the Debtor filed its Motion for Order Authorizing Payment of Critical Pre-Petition Claims (Docket No. 89) (the "Critical Vendor Motion"). USP was identified in Exhibit C to the Critical Vendor Motion with the Debtor proposing to pay certain pre-petition claims aggregating $364,439.79 (the "Critical Vendor Amount"). The Court signed an order granting the Critical Vendor Motion on March 9, 2023.

12. Also on March 9, 2023, this Court entered an Order approving the Amended Sale Motion, which authorized the Debtor to sell substantially all of its assets. As part of the Sale Order , the Debtor (Navarro) was required to, "within fourteen (14) days of entry of the Order, account for the U.S. Pecan Product, and accounts receivable, and Debtor and the U.S. Pecan Entities will endeavor to reconcile any discrepancies, lots, and accounts receivable to be confirmed, including but not limited to an onsite audit by the U.S. Pecan Entities or their authorized representative. U.S. Pecans, Ltd., and U.S. Pecan Trading Co., Ltd. are required to remove all U.S. Pecan Product from the facilities within thirty (30) days of Closing unless an agreement is reached with the Buyer." (Docket No. 145, pg. 16, ¶ 38).

13. On July 28, 2023, the Debtor filed that certain Notice of (I) Entry of Confirmation Order and (II) Occurrence of Effective Date, setting forth that, inter alia, the Effective Date occurred on July 28, 2023 (the "Effective Date") (Docket No. 270).

14. On the Effective Date, Daniel J. Sherman was appointed to serve as the

liquidating trustee of the Liquidating Trust of NOC, Inc. (the "Trustee") pursuant to the Confirmed Plan.

15. On April 28, 2023, U.S. Pecans, Ltd. (USP) filed its proof of claim in the amount of $4,060,420.60 which was docketed by the claims agent in this case as Claim No. 10031.

16. On June 28, 2023, the Debtor filed its Objection to Proof of Claim No. 10031 filed by U.S. Pecans, Ltd. (the "Claim Objection") (Docket No. #238) on the grounds that the claim is duplicative of the claim of U.S. Pecan Trading Co., Ltd. ("USPT"), that pre- or post-petition payments received by Claimant may be avoidable, that Claimant failed to reduced its Claim by any payments it received post-petition, including by the Critical Vendor Amount, and to the extent Claimant is seeking any duplicative recovery by USPT.

17. On July 28, 2023, USP filed its response to Claim Objection (Docket No. 268).

18. After several months of negotiations, the Trustee and counsel for USP resolved the Claim Objection and a Stipulation and Agreed Order Between the Liquidating Trustee and U.S. Pecans, Ltd. Resolving Objections to Proof Claim No. 10031 was entered on May 30, 2024 (Docket No. 347). USP was allowed a class 5 general unsecured claim in the amount of $2,889,000.00.

19. The Trustee, during the time that the parties were negotiating USP's proof of claim, had a more than adequate opportunity to evaluate any preference claims. However, no such issue was ever raised and the Trustee's counsel consented to the allowance of USP's claim.

20. On June 11, 2024, counsel for USP received a demand for recovery of Preference Payments from counsel for the Trustee. A true and correct copy of the demand is attached hereto as Exhibit 1.

21. The absolute deadline for the Trustee to file a preference complaint was January

30, 2025. On the last day possible for filing preference complaints, the Trustee filed this instant adversary proceeding and fourteen (14) other preference adversaries against other preference defendants. The barebones allegations contained in the fifteen (15) adversaries are virtually identical.

22. The Trustee's Complaint does nothing more than recite the basic elements of a preference action – i.e., the date of the Chapter 11 petition and a list of payments made to Defendant within ninety (90) days of that date.

23. The Trustee does not make any mention of the relationship between the parties, the fact that the pecans sold by Navarro belonged to USP, or the other relevant background facts described above, the date of any delivery of goods by Defendant, or the date of any invoice issued by Defendant.

24. Given the lack of relevant facts in any of the fifteen (15) complaints filed, it is clear that the Trustee made no effort to perform any due diligence regarding the relationship between the parties or USP's defenses prior to filing his Complaint against USP.

## Argument & Authorities

**A.     Motion to Dismiss Pursuant to 11 U.S.C. §547(b)**

25. In 2020, Congress amended 11 U.S.C.§547(b) to place a burden on the Trustee (or other preference plaintiffs) to conduct a certaun level of due diligence into affirmative defenses prior to commencing a preference avoidance action.

26. The relevant §547(b) language now states that "the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property."

27. Paragraph 15 of the Complaint merely states:

> The Trustee and his advisors have reviewed each of the Transfers and conducted on reasonable due diligence as to the circumstances of the case and any potential affirmative defenses under § 547(c) that Defendant may have. Upon such diligence, the Trustee has determined that each of the Transfers constitutes an avoidable preferential transfer.

Such a bland, stock statement, which is contained in all fifteen adversary complaints, does not satisfy the requirements of 11 U.S.C. §547(b).

28. *In re ECS Refining, Inc.*, 625 B.R. 425 (Bankr. E.D. Cal. 2020) kicked off the bankruptcy courts' analysis of the new standard by evaluating, first and foremost, whether "reasonable due diligence" is a condition precedent to litigation under § 547(b) and a prima facie element of a preference cause of action. *Id.* at 453–57. The Bankruptcy Court for the Eastern District of California looked to the Prison Reform Act and related opinions (*See Jones v. Bock*, 549 U.S. 199, 212–17 (2007)) for guidance on whether the due diligence language in § 547 creates an additional pleading requirement, holding that, in § 547(g), "Congress has expressly allocated the burden of proof on the issue of due diligence under § 547(b) to the trustee", and that "treatment of due diligence as an element of the prima facie case under § 547(b) is consistent, rather than at odds, with Congressional intent." *ECS Ref.*, 625 B.R. at 456, 457. The court found that the trustee in *ECS Refining* failed to adequately plead facts detailing its pre-filing investigation of the preference causes of action and granted the defendant's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on this and other grounds. *Id.* at 457–58.

29. *In re Reagor-Dykes Motors, LP*, 2021 WL 2546664, the Bankruptcy Court followed with a two-for-one analysis in its June 2021 opinion. Examining complaints filed in separate adversary proceedings against the three named defendants, the Bankruptcy Court for the Northern District of Texas found that, while one complaint, describing the relationship between

the debtors and defendant and the transactions at issue with specificity, met the new due diligence standard, the other two complaints, containing only information available from the debtor's bank statements and identifying transferees as "vendors," with no substantive information regarding their relationships with the debtors, did not meet the "reasonable due diligence" standard under § 547(b). *Id*. at *3–*5.

30. The Lubbock Court went on to say that the Court would not reach the issue of whether due diligence is an element because the Complaint failed to survive Rule 8 on other elements. Assuming due diligence is an element, what the Trustee plead is insufficient. The Trustee merely stated that it had performed "reasonable due diligence", "investigat[ed] into the circumstances of the case" and "[took] into account the Defendant's reasonably knowable affirmative defenses under 11 U.S.C. § 547(c)." The complaint also "acknowledges that some of the transfers might be subject to defenses." If due diligence is an element, merely paraphrasing the element will not satisfy Rule 8.

31. Similarly, the Delaware Bankruptcy Court found that the due diligence requirement is an element of a preference claim and not an affirmative defense. *Pinktoe Liquidation Trust v. Charlotte Olympia Dellal*, 2023 WL 2960894 (Bankr.D.Del. 2023).

32. The bland allegations set forth by the Trustee on the last day that the fifteen (15) preference complaints could be filed do not satisfy the due diligence requirements and the Complaint should be dismissed.

B.     **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted**

33. In order to prosecute a preference claim, the Trustee must be able to plead and prove, among other things, the Debtor had an interest in the property transferred so that the estate is diminished by the payment. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351

(5th Cir.1986).

34. The Trustee's Complaint does not refer to or acknowledge Defendant's ownership interest in the pecans that the Debtor sold which led to the payments made to Defendant.

35. Since the Debtor never had legal or equitable ownership of the pecans belonging to USP, payment to USP from the sale of those pecans are not preferential. *In re Maple Mortgage*, 81 F.3d 592 (5th Cir. 1996).

**WHEREFORE, PREMISES CONSIDERED**, Defendant U.S. PECANS, LTD. prays that Court enter an Order Dismissing the above-referenced adversary proceeding, and for such other and further relief to which this Defendant shall show itself to be justly entitled.

**DATED** this 2nd day of April, 2025.

                                            Respectfully submitted,

                                            **GORDON DAVIS JOHNSON & SHANE P.C.**
                                            4695 N. Mesa Street
                                            El Paso, Texas  79912
                                            (915) 545-1133
                                            (915) 545-4433 (Fax)
                                            hdavis@eplawyers.com

                                            By:   */s/ Harrel L. Davis*
                                                   Harrel L. Davis III
                                                   State Bar No. 05567560
                                                   Attorneys for U.S. Pecans, Ltd.

## **CERTIFICATE OF SERVICE**

    I certify that on the 2nd day of April, 2025, a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the court's ECF noticing system or by regular first class mail:

> Joshua N. Eppich
> Eric T. Haitz
> Bonds Ellis Eppich Schafer Jones LLP
> 420 Throckmorton Street, Suite 1000
> Fort Worth, Texas 76102
> Email: joshua@bondsellis.com
> Email: eric.haitz@bondsellis.com

                                              */s/ Harrel L. Davis*
                                              Harrel L. Davis III

June 11, 2024

**VIA EMAIL**

U.S. Pecans, Ltd.
c/o Harrel Davis
Gordon Davis Johnson & Shane P.C.
4695 North Mesa Street
El Paso, TX 79912
Email: hdavis@eplawyers.com

**Demand for Recovery of Preference Payments**

Re: *In re NOC, Inc.*; Case No. 23-40266-elm11; United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "**Bankruptcy Case**")

Introduction. Bonds Ellis Eppich Schafer Jones LLP (the "**Firm**") represents Daniel J. Sherman (the "**Trustee**"), Liquidating Trustee of NOC, Inc. Liquidating Trust (the "**Trust**"), who was appointed pursuant to the Amended Plan of Liquidation of NOC, Inc., Pursuant to Chapter 11 of the Bankruptcy Code [Doc. No. 240], as supplemented, amended and/or modified (the "**Plan**"), which was confirmed by the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") on July 14, 2023. The purpose of this letter is to demand recovery of payments made by Navarro Pecan Company, Inc. (the "**Debtor**") to U.S. Pecans, Ltd. (the "**Company**") during the ninety days prior to the filing of the Debtor's bankruptcy petition (the "**Preference Period**"), on behalf of the Trust. These transfers are preference payments that are avoidable under 11 U.S.C. § 547 and must be returned to the Trust under applicable federal bankruptcy law.

Petition Date. On January 30, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the Bankruptcy Court. Pursuant to the Plan, all causes of actions under 11 U.S.C. § 547 were assigned to the Trust to pursue for the benefit of the creditors of the Debtor.

Fiduciary Duty to Creditors. The Trust has a fiduciary duty to pursue the recovery of the Debtor's payments made during the Preference Period so that such payments may be ratably distributed to unsecured creditors in accordance with the Bankruptcy Code. This duty includes the unpopular task of pursuing and recovering 'preferential' transfers of cash or other property that the Debtor made to creditors within the Preference Period (or in the case of insider-transferees, within a one-year period prior to the Petition Date). Even if such payments were made in satisfaction of a valid debt (which is the case in many instances), Sections 547 and 550 of the Bankruptcy Code still require that they be returned to the bankruptcy estate so that the proceeds can be returned to unsecured creditors on a pro rata basis.

# EXHIBIT 1

### Statutory and Policy Framework

A primary policy of the Bankruptcy Code is to treat similarly situated creditors equally. The 'preference' sections of the Bankruptcy Code further this primary bankruptcy policy as its objective is to prevent favoritism by a debtor among similarly situated creditors who, in all fairness, should be on the same footing. Thus, 11 U.S.C. § 547 requires a creditor that received a greater payment during the ninety-day period immediately preceding the bankruptcy filing than other similarly situated creditors to return such payments to the bankruptcy estate so that the proceeds can be redistributed to all unsecured creditors on a pro rata basis.

It is understandably frustrating for a creditor who received payments for legitimate debts to be required to return the payments. The Firm, as well as the Trustee, appreciate this frustration. However, the Company received payment for obligations owed by the Debtor during the preference period in full satisfaction of some, if not all, of its claims against the Debtor, whereas other similarly situated creditors did not. Thus, the return of these transfers effectively increases the assets available for distribution to all unsecured creditors on an equal basis.

<u>Elements of a Preferential Transfer.</u>  11 U.S.C. § 547(b) provides:

> (b)    Except as provided in subsection (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property –
>
> (1)    to or for the benefit of a creditor;
>
> (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3)    made while the debtor was insolvent;
>
> (4)    made –
>
> > (A)    on or within 90 days before the date of the filing of the petition; or
> >
> > (B)    between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5)    that enables such creditor to receive more than such creditor would receive if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

### The Basis of the Preference Claim Against the Company

The Debtor's books and records reflect that the Company received payments from the Debtor during the ninety-day period preceding the bankruptcy filing of not less than **$2,096,260.90**. The Debtor paid the Company the following checks during the Preference Period (the **Subject Transfers**"):

| Check # | Effective Date | Name | Check Amount |
|---|---|---|---|
| 33816 | 11/1/2022 | US Pecans Ltd | $74,062.34 |
| 33818 | 11/2/2022 | US Pecans Ltd | $83,180.84 |
| 33820 | 11/3/2022 | US Pecans Ltd | $91,598.02 |
| 33897 | 11/7/2022 | US Pecans Ltd | $75,732.44 |
| 33900 | 11/8/2022 | US Pecans Ltd | $73,540.08 |
| 33907 | 11/10/2022 | US Pecans Ltd | $75,978.89 |
| 33908 | 11/11/2022 | US Pecans Ltd | $80,862.23 |
| 33911 | 11/14/2022 | US Pecans Ltd | $78,393.69 |
| 33917 | 11/18/2022 | US Pecans Ltd | $57,950.00 |
| 33921 | 11/22/2022 | US Pecans Ltd | $80,369.70 |
| 33923 | 11/23/2022 | US Pecans Ltd | $83,317.91 |
| 33926 | 11/28/2022 | US Pecans Ltd | $77,038.52 |
| 33932 | 11/29/2022 | US Pecans Ltd | $82,582.38 |
| 33936 | 11/30/2022 | US Pecans Ltd | $78,046.89 |
| 33937 | 11/30/2022 | US Pecans Ltd | $77,219.54 |
| 33989 | 12/1/2022 | US Pecans Ltd | $75,928.05 |
| 33992 | 12/2/2022 | US Pecans Ltd | $78,058.85 |
| 34058 | 12/9/2022 | US Pecans Ltd | $71,165.43 |
| 34072 | 12/13/2022 | US Pecans Ltd | $54,311.49 |
| 34073 | 12/13/2022 | US Pecans Ltd | $138,453.70 |
| 34085 | 12/15/2022 | US Pecans Ltd | $77,512.05 |
| 34110 | 12/16/2022 | US Pecans Ltd | $66,518.07 |

| 34115 | 12/19/2022 | US Pecans Ltd | $84,968.39 |
| 34119 | 12/20/2022 | US Pecans Ltd | $61,349.00 |
| 34126 | 12/22/2022 | US Pecans Ltd | $63,691.84 |
| 34130 | 12/23/2022 | US Pecans Ltd | $91,166.82 |
| 34133 | 12/27/2022 | US Pecans Ltd | $63,263.74 |

**If you contend that the Company did not receive these payments, you are hereby advised to notify us immediately.**[1]

Based on available information, it appears the Subject Transfers were made from the bank account(s) of the Debtor and thus constitute transfers of "an interest of the debtor in property."

Because the Company had a claim (i.e., a right to payment) against the Debtor when the Subject Transfers were made, the Company was a "creditor" under 11 U.S.C. § 101(10)(A). Therefore, the Subject Transfers were "to or for the benefit" of a creditor and 11 U.S.C. § 547(b)(1) is satisfied.

Because each of the Subject Transfers were made in satisfaction of a debt owed before such payments were made, the Subject Transfers were for or on account of an antecedent debt. Thus, 11 U.S.C. § 547(b)(2) is satisfied.

The Debtor was insolvent throughout the ninety days immediately preceding the bankruptcy because the sum of its debts was greater than the fair market value of the Debtor's assets. *See* 11 U.S.C. § 101(32)(A). Further, a debtor is presumed to have been insolvent during the ninety days immediately preceding the bankruptcy. *See* 11 U.S.C. §547(f). Thus, 11 U.S.C. § 547(b)(3) is satisfied.

Each of the Subject Transfers was made on or within ninety days before the Petition Date. As such, 11 U.S.C. § 547(b)(4) is satisfied.

Finally, the Company received more from the Subject Transfers than it would have received if (i) the Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code; (ii) the Subject Transfers had not been made; and (iii) the Company received payment on its claim to the extent provided by the Bankruptcy Code. In cases where creditors will not receive a dividend equal to 100% of their allowed claims, 11 U.S.C. § 547(b)(5) is satisfied. Such is the case here. Unsecured creditors of the Debtor will not recover 100% of their claims. As a result of the payments made to the Company during the ninety days immediately preceding the bankruptcy, the

---

[1] The Trust may learn (through discovery or otherwise) of additional transfers made to the Company during the ninety-day period preceding the bankruptcy. Therefore, the Trust reserves the right to amend this demand to include: (i) further information regarding the Subject Transfers, (ii) additional transfers, (iii) modifications of and/or revision to the transferee's name, and/or (iv) additional transferees that may become known.

Company received payment of 100% of its claim, or a portion thereof. This rate is far in excess of the rate to be received by other creditors. Therefore 11 U.S.C. § 547(b)(5) is satisfied.

The return of payments is required so that all unsecured creditors can receive a pro rata distribution of the proceeds to satisfy their claims at an equal rate. This is a preferable outcome to a handful of creditors receiving full payment to the exclusion of other similarly situated creditors.

### Potential Defenses

In certain cases there may be an exception to otherwise existing preference liability based on 11 U.S.C. § 547(c). Some of these exceptions, or defenses, include: (i) payments, which would otherwise constitute an avoidable preference, were part of a contemporaneous exchange for new value (the "**Contemporaneous Exchange Defense**"); (ii) the payments were made in a manner consistent with the prior ordinary course of dealing between the Debtor and the Company prior to the Preference Period or consistent with an objective industry standard (the "**Ordinary Course Defense**"); or (iii) that the Company provided subsequent credit or "new value" to the Debtor after receipt of payment, which under certain circumstances may qualify to reduce preference exposure (the "**New Value Defense**").

**If you believe that the Company qualifies for any defenses to the preference claim, you are requested to provide us with the documentation that you contend supports your defense(s) on or before June 25, 2024.**

### Demand for Payment

In order to avoid litigation and additional attorneys' fees being incurred, demand is hereby made for immediate payment of the **$2,096,260.90** that the Company received from the Debtor during the ninety-day period preceding the filing of the Debtor's bankruptcy petition.

You are hereby advised that we have been instructed by our client to take all actions necessary to collect the full amount of payments that the Company received from the Debtor during the ninety days immediately preceding the filing of the Debtor's bankruptcy petition. This includes the filing of a lawsuit against you on behalf of the Trust in the Bankruptcy Court, which has jurisdiction to adjudicate the preference claim, if payment is not received by the undersigned on or before June 25, 2024. Further, if required to file suit, the Trust will seek recovery of the full amount owed, plus interest and costs, as applicable.

You are further advised that any proof of claim filed by the Company may be disallowed unless the preference payments are promptly returned. To prevent creditors that wrongfully refuse to return preferential payments from further depleting the funds available to pay non-preferred creditors, 11 U.S.C. § 502(d) provides that the Court shall disallow any claim of any entity that fails to turn over (i.e., pay back) an avoidable preferential transfer. Accordingly, in addition to commencing litigation to recover the Subject Transfers, the Trust may object to any claim the Company has filed in the Debtor's Bankruptcy Case.

If you have any questions regarding this letter, you are directed to contact Aaron Guerrero (direct dial: 713-335-4838; email: aaron.guerrero@bondsellis.com).

Regards,

Aaron M. Guerrero